UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN P. HUDELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-1904-TAB-DFH |
| | ) | |
| HEARTLAND AUTOMOTIVE, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction.**

Plaintiff John Hudelson believes Defendant Heartland Automotive, LLC denied him a job application because he is deaf. On the surface, it is easy to understand why. An employment agency suggested Plaintiff apply for a job at Heartland. When Plaintiff went to Heartland, a company representative told him that Heartland was not hiring. Later, Plaintiff's employment counselor received a phone call and wrote Plaintiff a note stating, "That was Heartland calling me, they have company policie (sic), don't hire deaf." Believing he had been denied an application at Heartland because of his hearing disability, Plaintiff filed this lawsuit.

Despite these facts, however, additional undisputed evidence reveals that Heartland had a hiring freeze in effect when Plaintiff sought an application. No applications were accepted during this time period. In fact, two non-disabled individuals were denied an application the same day that Heartland denied one to Plaintiff. Accordingly, despite Plaintiff's belief that Heartland discriminated against him, the evidence shows otherwise, and Heartland's motion for summary judgment [Docket No. 29] will be granted.

**II.      Summary Judgment Standard.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories

and admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Militello v. Central*

*States, Southeast and Southwest Areas Pension Fund,* 360 F.3d 681, 685 (7th Cir. 2004).  "'Only

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or

unnecessary will not be counted.'"  *Fritcher v. Health Care Service Corp.*, 301 F.3d 811, 815 (7th

Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court

construes all facts and draws all reasonable inferences in the light most favorable to the non-

moving party.  *Darnell v. Thermafiber, Inc.*, 417 F.3d 657, 659 (7th Cir. 2005).  "Because the

purpose of summary judgment is to isolate and dispose of factually unsupported claims,

[Plaintiff] must respond to [Defendant's] motion with evidence setting forth specific facts

showing that there is a genuine issue for trial."  *Michael v. St. Joseph County*, 259 F.3d 842, 845

(7th Cir. 2001).

**III.      Background.**[1]

Plaintiff is deaf and uses written notes to communicate with hearing people.  [Pl. Dep. at

pp. 5-6.]  Oxford Automotive laid Plaintiff off in January 2005.  [*Id*. at 23.]  Plaintiff began

receiving employment counseling services from Western Indiana Employment and Training

---

[1] The facts are either undisputed or viewed in a light most favorable to Plaintiff, the non-
moving party.  In addition, this background section is an overview of the facts, not an exhaustive
recitation of all material facts.

("WIETS") shortly thereafter.  Companies in and around the Greencastle, Indiana area would generally contact WIETS when they needed employees.  [*Id*. at p. 73.] WEITS' clients were required to contact three prospective employers each week to keep their unemployment benefits. [*Id*. at p. 13.]  Barbara Deaton, an employment counselor at WIETS, recommended local employers to her clients to help them meet the three-per-week contact requirement.  [*Id*. at pp. 7, 13.]

Heartland, also located in Greencastle, manufactures parts for the automotive industry. [Louis Gudino Aff. ¶ 3.]  Heartland regularly solicited applicants from WEITS.  [Deaton Dep. at pp. 72-73.]  Heartland contacted Deaton seeking applicants with specific skill sets in December 2004 [*Id*. at p. 75] and again on February 18, 2005 [Pl. Dep. Ex. 12].  Beth Gregory was an assistant to Heartland's human resources managers.  [Gudino Aff. ¶ 13; Gregory Aff. ¶ 1.]  As an assistant, Gregory is not authorized to speak on behalf of the company and does not make policy decisions, including when to hire or criteria used in making hiring and firing decisions, and she does not perform managerial duties for the company.   [Gudino Aff. ¶ 13.]  Deaton's primary contact at Heartland was Gregory.  [Deaton Dep. at pp. 37-38.]

In the winter of 2004-05, Heartland experienced a period of slow production and could not hire new employees.  [Gudino Aff. ¶ 7.]  In December 2004, Heartland's president froze hiring of new employees except those with specialized skills.  [*Id*. ¶¶ 7-9; Tsugio Kobayashi Aff. ¶ 3.]  The company did not accept any "off the street" applications on or in the days leading up to February 15, 2005.  [Gudino Aff. ¶ 11.]  Heartland began taking applications again on February 18, 2005 after it lifted its hiring freeze.  [*Id*. ¶ 10; Kobayashi Aff. ¶ 5.]

On February 15, 2005, Plaintiff consulted with Deaton about potential job openings in

the area.  [Pl. Dep. at p. 43.]  Deaton suggested that Plaintiff go to Heartland.  [Deaton Dep. at p.

14.]  She also sent two other non-disabled individuals to Heartland that day.  [*Id.* at pp. 34-36,

58-59.]  When Plaintiff arrived at Heartland, he wrote a note to the Heartland employee asking

for an application.  [Pl. Dep. at p. 47.]  In response, the employee wrote, "Unfortunately, we are

not accepting applications at this time, but please try back again."  [Pl. Dep. at p. 47.]  Plaintiff

then wrote: "Barb Deaton sent me."  [*Id*. at p. 49.]  The person behind the desk indicated that she

would check with human resources.  [*Id.*]  When she returned, the employee confirmed that the

company was not accepting any applications at that time.  [*Id.*]  At no time did Plaintiff indicate

that he had specialized skills or that he was applying for a position that required a specific skill

set.

Plaintiff returned to Deaton's office and informed her that Heartland was not hiring.  [*Id.*

at pp. 54-55.]  Deaton was shocked when she found out that Plaintiff was unable to complete an

application.[2]  [*Id.* at p. 55.]  Yet, two other non-disabled clients that Deaton sent to Heartland

that same day both returned to inform her that Heartland was not taking applications.  [Deaton

Dep. at pp. 34-36.]  Deaton told Plaintiff that she would call him when Heartland began taking

applications again.  [Pl. Dep. at p. 55.]

Shortly after Plaintiff notified her that Heartland was not hiring, Deaton had a phone

conversation with Gregory.  [Deaton Dep. at pp. 19-20.]  Afterward, Deaton wrote to Plaintiff:

"That was Heartland calling me, they have a company policie [sic], don't hire the deaf."  [Pl.

Dep. at pp. 57-58.]  When Plaintiff asked why, she responded: "Said it would be unsafe."  [*Id.* at

pp. 60-62.]  Plaintiff returned to Heartland's front office to ask for a mailing address.  [*Id.* at pp.

_____

[2]Although Deaton has testified to the contrary about her reaction, the Court must view the facts in a light most favorable to Plaintiff, the non-moving party.

51-54.]

On February 18, 2005, Deaton sent Plaintiff an email indicating that Heartland was accepting applications again. [*Id*. at pp. 80-82; Pl. Dep. Ex. 12.] Plaintiff asked Deaton whether Heartland's policy concerning hiring deaf people had changed. [Pl. Dep. Ex. 12.] She replied: "don't know if they changed policy or not . . . ." [*Id*.] Plaintiff subsequently chose not to submit an application.

## IV.    Discussion.

### A.    Legal Standards under the ADA.

Plaintiff contends that Heartland refused to give him an application in violation of Title I of the ADA because he is deaf. "The Americans with Disabilities Act prohibits covered employers from discriminating against a qualified individual with a disability because of the disability with regard to such matters as hiring, advancement, and discharge." *Hoeller v. Eaton Corp.*, 149 F.3d 621, 624 (7th Cir. 1998) (citing 42 U.S.C. 112112(a)). It is undisputed that Defendant is a covered employer and that Plaintiff is disabled as required under the ADA.

There are two distinct types of discrimination claims under the ADA: failure to accommodate and disparate treatment. *Anderson v. United Conveyor*, 461 F. Supp. 2d 699, 706 (N.D. Ill. 2006). Plaintiff's claim is for the latter. A plaintiff can prove a claim of disability discrimination directly using direct or circumstantial evidence or indirectly via the *McDonnell Douglas* burden-shifting test. *Timmons v. General Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006). Plaintiff contends that he can defeat Heartland's summary judgment motion directly based upon circumstantial evidence. [Docket No. 35.] The Court evaluates Plaintiff's claim under both the direct and burden-shifting methods.

**B.      Plaintiff has not established an issue of material fact using the direct method.**

Under the direct method, Plaintiff must at least raise a triable issue that Heartland denied

him an application because of his disability.  *Anderson v. United Conveyor Supply Co.*, 461 F.

Supp. 2d 699, 707 (N.D. Ill. 2006) (citing *Robin v. Espo Engineering Corp.*, 200 F.3d 1081,

1089 (7th Cir. 2000).  The Plaintiff can do so using direct or circumstantial evidence.  *Buie v.*

*Quad/Graphic*, 366 F.3d 496, 506 (7th Cir. 2004).  Direct evidence "'essentially requires an

admission by the decision maker that his actions were based on the prohibited animus.'"  *Culver*

*v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005) (citing *Rogers v. City of Chicago*, 320 F.3d

748, 753 (7th Cir. 2003).  Circumstantial evidence of discrimination is evidence that "allows the

trier of fact to infer intentional discrimination by the decisionmaker."  *Rudin v. Lincoln Land*

*Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005) (internal quotation and citation omitted).

Under the direct path, the Plaintiff does not point to any direct evidence in his favor but

relies solely on circumstantial evidence.  [Docket No. 35.]  There are three types of

circumstantial evidence: (1) suspicious timing, ambiguous oral or written statements, behavior

toward or comments directed at other employees in the protected group; (2) evidence that

employees similarly situated to the plaintiff other than in the characteristic on which an employer

is forbidden to base a difference in treatment received systematically better treatment; and (3)

evidence that the plaintiff was qualified for the job in question but was replaced by a person not

having the protected characteristic and that the employer's stated reason for the difference in

treatment is unworthy of belief.  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir.

Feb. 8, 2007) (quoting *Sun v. Bd. of Trs. Of Univ. of Illinois*, 473 F.3d 799, 812 (7th Cir. 2007).

"Speculation does not meet a party's burden in defending a summary judgment motion.  Facts,

not an employee's perceptions and feelings, are required to support a discrimination claim."  *Uhl*

*v. Zalk Josephs Fabricators*, 121 F.3d 1133, 1137 (7th Cir. 1997); *see, e.g., Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003).

Plaintiff relies on the first type of circumstantial evidence to establish an issue of material fact. Plaintiff points to the following information as evidence of discrimination: (1) Deaton told Plaintiff that Heartland was hiring; (2) the employee at the front desk went to the back to speak to her boss; (3) the suspicious timing of when Heartland began accepting applications; and (4) Deaton's note to Plaintiff about Heartland's "policy" of hiring deaf people. [Docket No. 35.] The Court will address each in turn.

An examination of the undisputed evidence undermines what on its face appears to be a viable ADA claim. While it is true that Deaton told Plaintiff to go to Heartland to apply for a job, there is no evidence that Deaton told Plaintiff that Heartland was hiring. Deaton does not always check to see if employers are hiring before sending applicants. [Deaton Dep. p. 14.] In fact, when Deaton sent Plaintiff to Heartland, she was unaware whether Heartland was hiring. [*Id*. at pp. 14-15.] The Heartland employee who fielded Plaintiff's application request initially told Plaintiff that they were not hiring, and she did not change her answer after checking with her boss. [Pl. Dep. at pp. 48-49.] Significantly, Heartland's human resources office did not distribute applications to two other non-disabled individuals who also attempted to apply that day. [Deaton Dep. at pp. 58-59.] While the date when Heartland lifted its hiring freeze aroused Plaintiff's suspicion, "a 'temporal sequence analysis is not a magical formula which results in a finding of a discriminatory cause.'" *Buie v. Quad/Graphic*, 366 F.3d at 506 (quoting *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1034 (7th Cir. 1999)).

Viewed in a light most favorable to Plaintiff, the record shows that on February 15, 2005 Heartland was not taking applications from anyone, including non-disabled prospective

employees.  The record further establishes that on February 18, 2005 Heartland sent Deaton an

e-mail stating that Heartland was again accepting applications.  Had Plaintiff been denied an

application when Heartland was accepting applications, summary judgment would not be

appropriate.  But Plaintiff chose not to apply at Heartland again.  While Plaintiff's decision is

understandable, it forecloses a crucial piece of evidence in this case.

Deaton's note to Plaintiff about Heartland's alleged policy against deaf people -- while

obviously troubling -- is not sufficient to stave off summary judgment.  It is undisputed that

Gregory was not authorized by Heartland to make a statement about company policies.  [Gudino

Aff. ¶ 13.]  Moreover, there is no evidence before the Court that Gregory had decisionmaking

discretion with respect to who received or did not receive applications. Thus, the note is

inadmissible hearsay and/or irrelevant.  *See Keri v. Brd. of Trustees of Purdue University*, 458

F.3d 620, 630-31 (7th Cir. 2006) (statements purporting to represent statements made by

employee declarants that do not concern a matter within the scope of their agency with the

employer or made by declarants who are not involved in the decisionmaking process affecting

the employment action involved are inadmissible hearsay).  As a result, Plaintiff has failed to

raise an issue of material fact under the direct path, and this approach does not permit Plaintiff to

survive summary judgment.[3]

---

[3] Even if the Court had determined that the note was admissible evidence under Rule
801(d)(2)(D), this evidence would not thwart Heartland's summary judgment under the direct
method.  This is because Heartland has proffered uncontroverted evidence that a hiring freeze
was in effect at the time Plaintiff sought an application.  Consequently, as was seen with the
other non-disabled individuals who unsuccessfully solicited applications, Heartland would not
have provided Plaintiff an application at the time he requested one.  *See Bekker v. Humana
Health Plan, Inc*., 229 F.3d 662, 670 (7th Cir. 2000) ("When the employee has presented
evidence that the employer was motivated in part by discrimination, the defendant may avoid a
finding of liability by proving that it would have made the same decision absent
discrimination.").

       **C.**      **Plaintiff has not raised an issue of material fact under the indirect**
             *McDonnell Douglas* **burden-shifting test.**

The Court next turns to the indirect method, applying the *McDonnell Douglas* burden-

shifting test.  In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the United States

Supreme Court held that the plaintiff in a Title VII discrimination case carries the initial burden

under that statute of establishing a *prima facie* case of discrimination.  The *McDonnell Douglas*

test is regularly applied in ADA cases.  *See Timmons v. General Motors*, 469 F.3d 1122, 1126

(7th Cir. 2006); *Shaw v. GDX North America*, 2007 WL 433072, at *3 (N.D. Ind. Feb. 2, 2007).

The prongs under the *McDonnell Douglas* test are: (1) plaintiff falls within a protected class, (2)

plaintiff applied for and was qualified for a job for which the employer was seeking applicants,

(3) that, despite his qualifications, plaintiff was rejected, and (4) that, after his rejection, the

position remained open and the employer continued to seek applicants from non-disabled

persons of plaintiff's qualifications.  *Id.*  After proving a *prima facie* case, the burden of

production shifts to the employer to articulate a legitimate, non-discriminatory reason for the

employment decision.  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 492 (7th Cir. Feb. 8,

2007).  If the employer meets its burden, the plaintiff then has to raise a genuine issue that the

employer's reasons for adverse employment action were a pretext for intentional discrimination.

*Id.*

       Plaintiff's summary judgment argument relies entirely upon the direct method using

circumstantial evidence.  Thus, Plaintiff declined to address the indirect method under the

*McDonnell Douglas* test, let alone establish the facts that would raise a genuine issue of fact

sufficient to overcome Heartland's summary judgment motion under this test.  On this record,

Plaintiff cannot raise an issue of material fact related to the *McDonnell Douglas* factors.  While

the first and third prongs are not at issue, Plaintiff cannot raise a genuine issue of fact with

respect to the second and fourth prongs.  For instance, Plaintiff has failed to provide any

evidence that Heartland was seeking applicants when he attempted to apply.  Further, it is

undisputed that there was a hiring freeze in place at the time Plaintiff requested an application.

Thus, Plaintiff cannot raise a triable issue of fact concerning his *prima facie* case and summary

judgment is appropriate.

Even if Plaintiff had raised an issue of material fact, there is no evidence in the record

that Heartland's reasons for its actions were a pretext for discrimination.  "That is, the plaintiff

may attempt to establish that he was the victim of intentional discrimination 'by showing that the

employer's proffered explanation is unworthy of credence.'"  *Reeves v. Sanderson Plumbing*

*Products, Inc.*, 530 U.S. 133, 143 (U.S. 2000) (citing *Texas Dept. of Community Affairs v.*

*Burdine*, 450 U.S. 248, 256 (1981)).  As stated above, it is undisputed that there was a hiring

freeze at the time Plaintiff requested an application and Plaintiff has failed to provide evidence

that makes Heartland's hiring freeze "unworthy of credence."  It is understandable why Plaintiff

felt that he was being denied an application based upon his disability, but when viewed in light

of all of the undisputed facts, no reasonable jury could find discrimination.  Therefore, Plaintiff

fails to raise a triable issue of fact under the indirect approach.

## V.     Conclusion.

Plaintiff has failed to raise an issue of material fact that Heartland discriminated against

him in violation of the ADA.  Heartland did not have any job openings at the time Plaintiff

requested an application, and there was a hiring freeze in place at that time.  Furthermore,

Plaintiff has failed to show that Heartland treated him any differently than other non-disabled

applicants.  Even if Plaintiff had raised a genuine issue of fact regarding such, the record lacks

any evidence that Heartland's reasons for not providing Plaintiff with an application were a

pretext for discrimination.

For these reasons, Defendant's motion for summary judgment [Docket No. 29] is

GRANTED with respect to all claims.  Final judgment shall be entered accordingly.  Costs shall

be awarded to the Defendant.


Dated: 03/16/2007


_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana


11

Copies to:

Terry W. Dawson
BARNES & THORNBURG LLP
terry.dawson@btlaw.com

Michael Gregory Moore
mmoore8824@aol.com

Richard P. Winegardner
BARNES & THORNBURG LLP
rwinegar@btlaw.com